(C.D. 2556)

THE LANNOM MANUFACTURING Co. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 14, 1965)

*Allerton deC. Tompkins* for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Bernard J. Babb* of counsel), for the defendant.

Before WILSON and NICHOLS, Judges; OLIVER, J., not participating

NICHOLS, Judge: The merchandise involved in this protest is limited to two types of balls, invoiced as RID–12 recreation softballs and 3ID–12 recreation softballs, respectively. They were assessed with duty at 15 per centum ad valorem under paragraph 1502 of the Tariff Act of 1930, modified by T.D. 53865, supplemented by T.D. 53877, as baseballs. They are claimed to be properly dutiable at 10 per centum ad valorem under paragraph 1502, modified by T.D. 51802, as other balls, not specially provided for, not wholly or in chief value of rubber.

Paragraph 1502, as modified by T.D. 53865, as supplemented, *supra,* under which the merchandise was classified, and so far as pertinent, reads as follows:

PAR. 1502. * * * baseballs, footballs, tennis balls, golf balls, and all other balls, of whatever material composed, finished or unfinished, primarily designed for use in physical exercise (whether or not such exercise involves the element of sport), * * * all the foregoing, not specially provided for * * *. [Tariff Act of 1930.]

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Baseballs, of whatever material composed,
    finished or unfinished _____15% ad val.
    [Paragraph 1502, as modified, *supra.*]

Paragraph 1502, as modified by T.D. 51802, under which the importer claims, provides in part:

Footballs and other balls * * * not wholly
    or in chief value of rubber * * * _____10% ad val.

The plaintiff called two witnesses and introduced seven exhibits. Exhibits 1 and 2 are illustrative examples of plaintiff's RID–12 and 3ID–12 recreation softballs. Exhibits 4 and 5 are stated to be the same as exhibits 1 and 2 with pieces removed to demonstrate the interior of the balls.[1] Exhibit 3 represents the official baseball used in

---

[1] Exhibits 1, 2, 4, and 5 are stated in the record to be illustrative of the imported merchandise and themselves imported though not necessarily as parts of the shipment before the court. Exhibits 1, 4, and 5 are plainly marked with the word "Jamaica" apparently in compliance with sec. 304, T.A. of 1930, as amended, and sec. 11.8(a), Customs Regulations of 1954, as amended. Exhibit 2 shows no mark to indicate country of origin. At

the major leagues. Exhibit 6 is an opened-up example of an official Little League baseball. Exhibit 7 is plaintiff's catalog, illustrative of the various kinds of baseballs, softballs, and recreation balls manufactured and/or sold by the importer, including illustrations of the merchandise at bar.

Plaintiff's first witness, Mr. Charles E. Parish, who was employed by the importer since 1928 and had held the positions of salesman, treasurer, and vice president before becoming president in 1956, testified that The Lannom Manufacturing Co. is the largest manufacturer of baseballs and recreation balls in the country, selling to the better known sporting goods outlets. Mr. Parish testified that he had personally sold baseballs, softballs, and recreation balls in every state, except Maine, and had seen them in use. In his opinion, the merchandise at bar could in no sense be described as a baseball, and he had never heard it referred to as such.

During the course of testimony at trial, the various constructional and design differences between a major league baseball, as illustrated by exhibit 3, and the imported recreation softballs, as illustrated by exhibits 1 and 2, were related and can be summarized as follows:

| Constructional differences | Baseball | Softball |
|---|---|---|
| Size | 9 to 9¼ inches in circumference | 11½ to 12 inches in circumference |
| Weight | 5 to 5½ ounces | 6 to 8 ounces |
| Cover | white alum horsehide | split cowhide |
| Interior | cork center, bound with rubber covering, and wrapped with wool yarn (75 percent virgin wool, 25 percent reused wool) | exhibits 1 and 2 are filled with compressed bagasse (ground sugar cane stalks) |
| Stitching | 100 to 104 closely sewn stitches | 60 stitches |
| Design differences | they are designed to be thrown overhand with speed, to be batted with baseball bats, and to be caught with gloves; generally, they are to be used in large areas | designed to be thrown underhand at slower speeds; they are not designed for batting or catching with gloves; they are generally to be used in smaller areas, such as picnic grounds or backyards |

The plaintiff's second witness was Mr. John Anderson, executive vice president of the Hutchinson Brothers Leather Co., manufacturer of athletic equipment, including baseballs, softballs, and recreation

this late stage in the case, we deem ourselves obligated to presume that the absence of any marking must have some legitimate explanation. However, we believe that articles offered in evidence as samples of imported merchandise ought to display lawful markings or else an explanation of the absence of marking ought to be made.

balls. His company is one of the largest distributors of balls in the United States. Mr. Anderson had been with the company for 29 years, working as salesman, sales manager, and vice president. He testified to having personally sold and seen in use these various types of balls throughout the country. When questioned concerning the constructional and design comparisons as related by Mr. Parish, Mr. Anderson acknowledged his agreement. His company purchases the ball illustrated by exhibit 1 from The Lannon Manufacturing Co., but does not deal in the type of ball represented by exhibit 2 because, as he put it, "this is strictly a piece of junk and we would not handle a ball of that quality." (R. 79.) The witness further testified that, in his opinion, the merchandise illustrated by exhibits 1 and 2 are not baseballs.

The question of what is a baseball, as provided for in paragraph 1502 of the Tariff Act of 1930, was before this court in the case of *New York Merchandise Co., Inc.* v. *United States*, 10 Cust. Ct. 400, Abstract 48035. The provision for baseballs was there construed to be sufficiently broad in scope so as to include cheap or inexpensively constructed balls, of inferior material and workmanship, but of a kind usable by children to play baseball. The statute itself covers "baseballs * * * of whatever material composed." A baseball in the tariff sense is not restricted to a rigid formula. For purposes of this case, we construe the provision for baseballs in paragraph 1502 as covering more than those baseballs meeting the detailed specifications of any organized league, but that does not decide the case at bar.

While both witnesses frequently refer to the merchandise as recreation or picnic balls, and not proper softballs, plaintiff's brief recognizes that they fall within a category of softball. Even more importantly, the samples themselves are marked in clear language as softballs and are offered under such category in exhibit 7, plaintiff's customer catalog. After Mr. Parish testified that the involved merchandise is sold to sporting goods stores, and retail hardware and drugstores, he was asked the following question on cross-examination (R. 62):

XQ. And, according to your knowledge and experience, isn't it a fact that they are sold as softballs?—A. I think so.

In our view, the legal result is the same whether the samples are proper softballs or not, so it is not necessary to labor the point of just what they are.

We turn now to the underlying issue in the case, that is, whether softballs or nondescripts are included within the *eo nomine* provisions of paragraph 1502 as "baseballs" or "other balls," as both terms appear in the original paragraph and as modified.

Plaintiff contends, relying mainly on the experiences and opinions of its witnesses, that the balls in issue never have been and never are referred to as baseballs in common parlance. Further, that they are not bought and sold as baseballs and are not used by children or adults in playing the game of baseball.

Plaintiff also maintains that Abstract 48035, *supra*, is distinguishable on the grounds that the merchandise in that case "resembles in every respect a big-league baseball," whereas the balls involved here are much larger in circumference and are readily distinguishable from big-league balls. Secondly, the balls, in that case, were found to be the type used by children in playing baseball, while the present merchandise is not so used.

The Government, on the other hand, claims that the items at bar are softballs and, as such, are a form of baseball, relying upon the oft-cited rule that where a tariff provision names an article without words of limitation, and absent a showing of legislative intent, judicial construction, or administrative practice to the contrary, all forms of the article are included therein. In support of this contention, the Government cites dictionary and encyclopedia authority to establish the fact that softball grew out of and closely resembles the game of baseball. Further, that at the time of the passage of a tariff act, softball, sometimes known as "indoor baseball," was a sufficiently popular sport to conclude that Congress was aware of this similarity and considered softball to be a form of baseball when enacting paragraph 1502.

The meaning of an *eo nomine* designation is to be determined in accordance with its common meaning as of the time of enactment. *Sears, Roebuck and Co.* v. *United States*, 46 CCPA 79, C.A.D. 701. It is a further principle of tariff construction that articles are classifiable according to both their general usage and trade denomination, the presumption being that not only is Congress aware of both when employing language for the law but also that they coincide. *Nylos Trading Company* v. *United States*, 37 CCPA 71, C.A.D. 422.

It is not necessary to recite a particular dictionary definition for "baseball" since, to this court's knowledge, all dictionaries, whether pre-1930 or post-1930, relate first, the common understanding of what the game is and, secondly, that a baseball is the ball used in that game. Volume 3 of the Encyclopedia Britannica, pages 166F–166I (1947 ed.) traces the origin and growth of the game and supports what the court otherwise can judicially notice, i.e., that, by 1930, baseball was a highly developed and regularized sport, similar in every material respect to the game as played today.

On the other hand, while the game of softball is not mentioned in the older dictionaries it was, nevertheless, as noted in the defendant's

brief, a well-developed and popular game in 1930, having reached international as well as national scope by 1925. 20 Encyclopedia Britannica 924–25 (1947 ed.). It commenced from attempts to play baseball indoors, acquired names like "kitten ball" and "indoor baseball," and later was moved outside and played in ball parks and playgrounds throughout the country. By 1926, it was called "softball" and 6 years later, the first national amateur league in the United States was instituted.

Thus, at the time of enactment of paragraph 1502, and continuously since, baseball and softball have existed as related but distinct games.

To whatever extent the games may resemble one another, the same is not equally true for the type of ball used in each. As noted in Webster's definition, Webster's Third New International Dictionary (1963), as well as in 20 Encyclopedia Britannica, *supra*, one of the essential differences between baseball and softball is the size of the ball used. A softball, whatever its similarities or dissimilarities in material construction to an official or nonofficial baseball, is nearly one-third again the size of a baseball. The size of a softball is directly related to its intended use, i.e., to be pitched underhanded, in contradistinction to the size and use of a baseball. Such a difference has existed since well prior to the 1930 tariff act. *Cf.* the record, page 75; and volumes 3 and 20 of the Encyclopedia Britannica, *supra*.

Much of the testimony in this case concerns itself with drawing distinctions between official league specifications for baseballs and those used in the manufacture of the balls at bar. As noted above, this is not the test. However, there remains the uncontradicted statements of two long-time and highly experienced employees of the sporting goods industry to the effect that, since circa 1930 to the present time, the trade denominations "baseball" and "softball" are separate and distinct and commercially exclusive.

The most readily distinguishable feature, namely, circumference size, is by itself sufficient to distinguish the involved merchandise from the holding of this court in Abstract 48035, *supra*. The existence of two well-organized sports, namely, baseball and softball, distinguishable by rules, playing areas, equipment, and techniques, and each possessing popular acceptance by participant and fan alike, all argue strongly for the proposition that the term "baseballs," as used in the Tariff Act of 1930 and as commonly understood, does not include the merchandise at bar. Contrary to the reasoning in the Government's brief, Congress, presumably aware of the popular and trade distinctions between the two types of balls and the sports from which their names are derived, chose to provide specifically for "baseballs" only.

The rule of construction that an *eo nomine* designation, absent contrary intent or construction, includes all forms of the article named

has as a prerequisite the showing that the particular merchandise is so named. *Cf. Crosse & Blackwell Co.* v. *United States*, 36 CCPA 33, 38, C.A.D. 393. In *Mawer Co.* v. *United States*, 7 Ct. Cust. Appls. 493, T.D. 37108, the form and characteristics of the merchandise, the way it was used, how it was known and traded, were held to be fundamental factors in the application of the rule.

In the case at bar, there is no question but that the merchandise falls within the provisions of paragraph 1502. The language of paragraph 1502 is seemingly broad enough to include all forms of balls used primarily for physical exercise. However, some are named specifically and according to well-known and regularized sports. See *United States* v. *F. W. Woolworth Co.*, 24 CCPA 338, 341, T.D. 48770. When all is said and done, the controlling fact is that those children and learners who would use the nonspecification baseball involved in Abstract 48035, *supra*, would think they were using a baseball to play the game they would commonly understand to be baseball. On the other hand, users of the items at bar would not refer to them as baseballs, nor would they refer to whatever game they played as a baseball game. This is apparent whether or not the merchandise is properly described as a softball or some other kind of ball.

For the reasons stated, we hold that the imported items at bar are "other balls * * * not wholly or in chief value of rubber," and, as such, are properly dutiable at 10 per centum ad valorem under paragraph 1502 of the Tariff Act of 1930, modified by T.D. 51802, as claimed in the protest. The protest, abandoned as to all other items (R. 2), is sustained to the extent indicated. Judgment will be rendered accordingly.